All right, our third case this morning is number 21-12564, Donrich Young v. Grand Canyon University. Mr. Webb, whenever you're ready. Thank you, Your Honor, and on the ominous note of the thunderclap, may it please the Court. And good morning, my name is Adam Webb of Webb, Claes, and Lemon here on behalf of the appellant Donrich Young, who is the plaintiff below. And Mr. Young wanted to improve his as you know. This is a multi-billion dollar for-profit corporation at the time of the amended complaint worth over five billion dollars. All of that money comes from the federal government in the form of student loans, and it is set up to basically feed money from our taxpayer dollars to Wall Street. But let's look at how Mr. Young is a microcosm of what they have been doing. Let me ask you a question. The alleged breaches here are based on documents, or are they extra document breaches? In other words, you're relying on the student handbook, the policy document, the enrollment agreement. Is there anything else you're relying on for the promises that were breached with regards to that legal claim? Yes, there are, Your Honor. It absolutely is based on the documents, and I'll be glad to go through that in a bit. But it's also based on the incentivized recruitment system. Every student has a recruiter at Grand Canyon University. It's heavily incentivized, which is a federal problem under the federal Department of Education regulations. They've been busted on that before. But you have a very highly financially motivated student advocate that's going to get you into the program and get you spending federal dollars for Grand Canyon University. So there's a lot of back and forth by email and verbal. It's not just the contract. But, and of course our allegations... Does your complaint specify which of the alleged breaches were because of promises made by the recruiter, and which ones were based on documents issued by Grand Canyon University? And of course, I will contend that under Arizona law, that's not required. Obviously, if you look at the Little v. Grand Canyon University case, Federal District Court, Arizona, last year, this defendant, the court said, rough idea, not exact language. That's all you need under Arizona law. Okay? And we have given the rough idea and plenty more than that. Please look at the enrollment agreement of Mr. Young himself. That's found at docket 14-4. If you look at page 9 of that enrollment agreement, you will see... What page? What page? Page 9 of his enrollment agreement. You will see a chart showing that he could finish his dissertation and his degree within 60 credit hours. There are three dissertation classes at the bottom, obviously showing that you could complete it within 60 hours. That's not true. Okay. Tell me why you think it's... Because this is one of your major claims. Why it is virtually impossible to complete that doctorate degree in 60 hours. Right. Explain that to me. Right. I mean, we know it. Seven plaintiffs have said it. You understand. That doesn't... That's not my question. My question is, explain it to me. Right. Explain to me why it's impossible. We talk to people every week, Your Honor. So I don't want you to disregard that seven plaintiffs at the start of this case said it was impossible. There are not seven plaintiffs here anymore. I know. Mr. Young also says it's impossible. Okay. Don't disregard that. That's his allegation. Now, how do we know it's impossible? Because on the documents alone, which, of course, it's odd that a defendant would prove up that they are lying to people. That would be odd. So it's a weird standard that Your Honor is suggesting applies. That we have to show the... I'm not suggesting anything. Yes. Your Honor, in discovery... You're not helping yourself by not answering the question. Yes. My question is, based on your allegations, just explain to me why it's impossible to complete the doctorate degree in 60 credits. Okay. Because you are required to go to the fourth, fifth, sixth, seventh dissertation courses before you can complete your dissertation, which... Let me just stop you there. My understanding from reviewing the materials was you're not required to go to those unless you're not able to complete it with the use of the fourth. Now, I did... I understood your claim to be that you're not able to complete it by the fourth because faculty and the committee, I guess, on dissertations don't give any feedback or support like they promised they're going to do, and so that's what makes it impossible. Did I misunderstand that? Is there something else there? It is a structural impossibility, but it's also a realistic impossibility. Your Honor's pointed out that on paragraphs 42 and 49, Mr. Young and the others allege that there's no guidance and that there's no ability to do it because of the lack of guidance, lack of faculty, lack of resources. So that's obviously part of it, but it's also impossible. Even if you go above and beyond and make your own resources, for example, it is impossible. And, you know, we talk to people every week, and so we know it's impossible. Discovery will easily show it's impossible, but I want to emphasize for you that their own document, the milestone... I don't read it that way, and let me tell you why. It talks about the optimal, the optimal, and then the longest or the minimal time, right? And one of those, the optimal, would be you can finish it if you do these things. This is optimally how it works. And then the other one is, but in the worst case scenario, these are the other resources we offer, and it could take longer, but this is if you aren't, if you don't bring yourself to comply with the optimal path. So to me, I don't think the documents show what you're suggesting, but I mean, by all means, explain where I'm misunderstanding this. Your Honor is adopting the District Court's analysis of that, which is based on the declaration of a Grand Canyon University paralegal that said that's how it should be interpreted. If you look at each column, one of them says minimum, it says minimum progression point. We all know what that means. It means that you have to make at least this much progression in order to continue. Thank you. But that is very different than saying that you can't make a certain amount of progression within that time. That's why the optimal progression point, the way you're reading it, seems to me to read out of any meaning the column that's called optimal progression point. Well, Your Honor, and you just said exactly how we interpreted it. Minimal means minimum, not maximum. That's what they say it means. That's the maximum. Minimum means minimum. And Your Honor is reading out that column. I think maybe you might have misunderstood what I was saying. When it says minimal progression point, what I am understanding is if you do the least you can possibly do and still get by, this is what you have to do. Optimal is if you do the most you can possibly do and everything's going well, this is how long it will take. That is very different than saying you can't get it done within 60 credits. Your Honor, this is a... Otherwise, what does optimal progression point column mean? Your Honor, this is a horribly worded chart. Okay, I think we can all acknowledge that. Minimal, they say, means maximum. This is the worst you can do. And optimal obviously means optimal. This is the best you can do, I guess. I think it's the amount of effort you put in, right? Or presumably. I understand your client takes a different position on that. Sorry, excuse me. No, that's okay. So, if we're talking about the amount of effort and the amount of merit, maybe, to the work, then I think it makes perfect sense. Otherwise, I don't understand. I mean, what does this mean otherwise? In the way you're construing it, what does optimal progression point mean? Your Honor, let's just assume this for the sake of our pleadings, which is what we're supposed to do at this point. The staff, all the folks on these dissertation committees, is only looking at that right column. That's the reality. Okay? And it says minimal progression point, and that's what they're doing. Okay? There's difference. You can look at other documents and find all types of things. But our pleading says that everyone lives by the right column. And we base it on not just that chart, but the reality of the facts on the ground. It said nine different ways and nine different paragraphs of our amended complaint. This is the reality. Okay. But my understanding of why you say that's the reality is that you can't get the feedback and support you need. Not, I mean, not anything that, I mean, I don't think you can just look at this chart in a vacuum, which is what you seem to now be suggesting, and say that the chart proves that you need to get more than 60 hours. I mean, that's how I am understanding, I'm understanding your complaint to say the reason that you can't do it under optimal progression, which would allow for a 60 credit hour passage rate, is because you're not getting the support and the guidance and the feedback that have been promised. Am I missing something here? Your Honor, that is absolutely true. You can't do it because of what's provided to you. But I don't want you to disregard that where a document is so ambiguous like this, and we have pleaded that they are enforcing it by the right column and mandating that you go through these steps. And that's the reality that seven people have suffered, including Mr. Young. Okay, so let me go back to my first question, because I think Judge Rosenbaum and I are on the same page as this. I understand the allegation that the 60 credit hour requirement is not enough and cannot be met because they don't provide you with the support necessary to get there. This is not the sort of program, as I understand it, where you just go to class, take an exam, pass or not pass. A doctorate degree is very different. I get that. But you seem to be pressing a claim, a subclaim or a sub-argument, that the documents themselves make it structurally impossible. And that's where I'm having trouble. If you had a document that said you need 60 credit hours, and then you had another document that said, by the way, you also need 15 more credit hours on this, then I could see the conflict and I could see you saying 60 is not really enough. It's really 75. So tell me where in the documents you derive the claim that it is structurally impossible to do this in 60 credit hours. I'm going to accept the direction of both of your honors and stop talking about the milestone table. And I'm going to say that there is no documentary contractual document where they promise or where they admit or concede that you cannot do it in 60 hours, which of course is the case. They have not put in writing that their reality is that you cannot finish it. So I concede, other than the milestone ambiguity in the table, there is no other document that we can currently point to, although we'll get legions of documents from Discovery that prove this, of course. We're just dealing with your complaint right now. And we have stated in at least nine paragraphs that that's the truth. And we know it from talking to hundreds of people and certainly seven plaintiffs, that this is the truth. So let's not ignore the facts and the allegations because they're not backed up by some of their own self-serving documents. That is a ridiculous standard to impose on folks that have not been able to pry into their documents through Discovery. It's not a standard anybody's imposing on you. It's a claim you're pressing. Yes, Your Honor. And the breach is that they promise you can do it in 60 hours and there's no question they do that. We can look at the enrollment agreement and see that they promise you can do it in 60 hours. That is not true. Okay. And that's not true because we've proven it. Our folks have gone through and done everything they've been asked to do. Not only can they not do it in a little over three years and 60 hours, you can't even get close. It's not even a close call, Your Honor. And that's been proven time and time again. Look at the allegations of the other plaintiffs. Don't ignore it. They're not here. But that's an allegation and a complaint. They all go through the same thing. Some of them have taken these classes for years using federal money, using their own time and effort, and using their own money. They have been ruined by this egregious, fraudulent practice. And I appreciate your time, and I will reserve the rest. Thank you. Okay. Thank you, Mr. Webb. Mr. Dickerson. Good morning, and may it please the Court. Deren Dickerson on behalf of Defendant Appellant Grand Canyon University. There are two primary problems with Plaintiff's Complaint which the District Court picked up on. First, that there's no merit to the central allegation as Judge Rosenbaum and Judge Jordan picked up on during my colleague's discussion. Plaintiff Young filed this litigation because he did not complete his dissertation in his desired time frame. It's not uncommon or surprising as a doctoral dissertation takes students different amounts of time depending on various personal as well as academic factors. Counsel, let me ask you, with respect to how I understand the complaint, I understand the complaint to be alleging that, two things really, that the promise to give feedback and support necessary to be able to obtain the doctorate degree was broken by Grand Canyon, and that the implicit promise of good faith in supplying that feedback and support and guidance was also violated. And I wonder, it seems to me like there are enough allegations, it's close, but it seems to me like there might be enough allegations to support those claims because Mr. Young alleges that GCU maximizes the amount of money it can make from research continuation courses and dissertation research continuation courses by failing to ensure that a dissertation chair and committee members provide prompt and meaningful feedback to students regarding their dissertations and refusing to approve valid and methodologically sound research proposals, and that it intentionally understaffs doctoral committees and disincentivizes members from promptly offering guidance to students. Additionally, it says things like the GCU faculty failed to provide prompt and meaningful feedback, excuse me, regarding Mr. Young's dissertation in particular, that GCU contractually agrees to provide its doctoral students the quote, individualized support, unquote, needed to timely complete a dissertation in exchange for the student's payment of tuition toward research continuation courses, and that it promises that dissertation chair and committee members will work directly with doctoral candidates to complete dissertations in a timely manner, and that all of these promises are broken, and that GCU does not do any of these things. Why is that not enough to support the claim? Well, I dropped my pen and then a roach almost took it. There are a number of, a couple of problems with those allegations. First, the first cause of action is for breach of contract. In order to state a breach of contract claim, you have to identify a specific obligation that was breached. Plaintiff has not identified any contractual obligation relating to those things that you just mentioned anywhere in the, in his complaint. What about the, what about the implicit promise of good faith? Sure, the allegations relying, that he relies upon on his implied covenant claim are too conclusory and not specific or particularized to him, which is a problem throughout the complaint. There are only four paragraphs in the entire complaint, paragraphs 68 through 71, that are actually specific to Mr. Young. And those four paragraphs don't support any of his allegations. They don't speak to any contractual obligations. They don't speak to any alleged misrepresentations. But, and importantly, I'm sorry, he does say though specifically that he was not given the guidance and support and feedback in a timely way. I mean, doesn't he say that later, like in paragraph 71 specifically, GCU faculty failed to provide prompt and meaningful feedback regarding his dissertation. Despite his best efforts, the necessary guidance and resources have not been made available such that his dissertation could have been completed on a timely basis. Why isn't that specific enough to him? Sure, so with respect to the contract claim, there's still no contractual obligation identified. With respect to the implied covenant claim, the problem with that is that there's no factual detail sufficient to identify what conduct actually supports that claim. It's... Let me ask you, what else could he possibly say though? I mean, you know, if he's trying to show that they failed to do something, then what can he say besides, I tried to do this, I tried to do that, they didn't give me any support, they didn't give me any feedback. Sure, he could specify who he attempted to talk to, who neglected his request for feedback, in what ways the university did not provide feedback. Otherwise, it's just a conclusion, and according to Iqbal Twombly... That sounds like heightened pleading. I'm sorry? That sounds like a heightened pleading requirement to who, what, when, where, why, how. Well, no, not at all, Your Honor, and that's the argument the plaintiff makes, but it's not about heightened pleading, it's about satisfying Rule 8A as articulated by Iqbal and Twombly, and this court... Let's talk about your argument concerning the contractual promise. Take the documents as they exist, okay? And the allegation is, I'm making this allegation up, I know it's not in the complaint, but I'm making this up. The allegation is, they do not provide, they, Grand Canyon University, does not provide a dissertation committee to review your proposed dissertation work. Would there be a breach of contract claim? If there is a contractual obligation... No, it's the... The documents are exactly the way they are now, and the allegation is, they never provided a dissertation committee to review my work, so I could never complete that course that required the first dissertation course, let's say. Would there be a valid breach of contract claim? There would not be a valid breach of contract claim under that scenario if there's no contractual obligation that promises to provide a dissertation committee. How are you supposed to get past a course without a dissertation committee? How are you supposed to... How are you supposed to prepare a dissertation that is going to satisfy the university's educational requirements and doctoral requirements without a dissertation committee? Well, colleges can then address that in a number of different ways. In some instances, there's a dissertation liaison who helps through the process, and I don't disagree with you. If that is the process that's set up and the promise that's made to the student, and they don't provide... In a doctorate program, Mr. Dickerson, isn't there an implicit promise that someone is going to review your proposed dissertation work and render some sort of verdict on it and guide you through it? Like, this is not good enough. It's got to be more specific. This is too general. This has been said before. It's got to be more independent. Yes, Your Honor. It's implicit in a doctoral degree, is it not? I agree with that. Someone's going to review that. I agree with that. I understood your hypothetical to suggest a particular way of doing that and an allegation that doesn't exist in the... As you mentioned, it doesn't exist in the complaint that there wasn't a process for doing that. There are implicit promises in a doctoral degree program that says you can, not you will, but you can complete this degree in 60 credit hours. There are some implicit contractual promises that are not set out in the documents, right? For example, someone's going to teach you the courses. Someone's going to review your dissertation work. Someone's going to pass on your dissertation work. Someone's going to tell you whether you pass or you fail or whatever. Those are implicit promises that are not expressly stated in his enrollment contract, but if you didn't provide those things, you'd breach, right? Yes, I would agree with that. I would agree with that, but you'd have to have... One of those, to go back to Judge Rosenbaum's question early on, is the allegation that they did not provide the support. A doctoral program is an interactive affair. It's not just a student going to classes to get his or her bachelor's degree. It's an interactive process, and if you don't provide one end of that process, so the allegation goes, you've breached, and if not an express contractual promise under Arizona law, you've breached a covenant of good faith and fair dealing. Your Honor, yes, but your hypothetical allegation was far more specific than anything in the complaint. I understand, but I'm trying to... But your position was, if it's not in the documents, there's no breach of contract, and now you've backtracked from that. No, Your Honor, they're alleged breach of contract, and then within their cause of action, they allege this breach of implied covenant, and those are two different things. When I was talking to Judge Rosenbaum, I was addressing both of those. On the one hand, if we're talking about breach of contract, there has to be a contractual obligation. But you've agreed that there are implicit contractual obligations that are not set forth in the enrollment materials, right? That's correct. Okay. But they are required to still specifically allege the facts associated with that claim. And so the way you laid it out was specific. There's no dissertation review or any process to review. Their allegation is he didn't get the support he needed. That doesn't tell the defendant anything about the alleged conduct. That's a squishy and vague allegation that has no factual content. It's the exact type of conclusion that Iqbal and Twombly urges courts to disregard. What is squishy about the allegation that GCU fails to ensure that its dissertation chairs and committee members provide students with prompt and meaningful feedback regarding their dissertations? Well, it says nothing in particular about Mr. Young's experience. What does it mean to provide prompt? He's talked about it. I mean, I read to you earlier the allegation that he makes that he did not get specific and prompt feedback. In addition, it says that GCU doesn't provide students the individualized support needed to timely complete a dissertation. And it says the dissertation chair and committee members will work directly with doctoral candidates and that neither of these things happened. Why is that not specific enough? Well, first of all, that is untethered to Mr. Young's particular experience. That's not within those four paragraphs that speak to Mr. Young's circumstance or experience. I mean, he's basically alleged as much in the proceeding paragraph that I read to you. Well, in his paragraph, he says he didn't receive support. And that doesn't give the defendant enough notice as to what conduct is being alleged. And beyond that, it really gets close to alleging or complaining about the educational quality, which courts have consistently. So let me ask you about that. Two questions about that. The first one is, it's possible I missed it, but I couldn't find anywhere under Arizona law where the educational malpractice doctrine has been applied or recognized. The second one, which is a little bit, I think, more significant, is I don't think you raised that in the district court. I may have missed it. Maybe you did. So maybe you could address both of those. Sure. The educational malpractice doctrine is not specific to any particular state. It's a judicial doctrine that has arisen in courts throughout the country. In Arizona courts? I have not seen a particular Arizona court that has addressed the issue one way or the other, to answer your question. On the waiver issue, it's important to understand that this was in response to a new argument that plaintiff raised on appeal. For the first time, a plaintiff argued that his breach of covenant claim is supported by allegations of substandard instruction. And so we addressed that argument that was raised on appeal for the first time. I do have a question for you. Can you discuss for us the dismissal of the breach of contract claims and the dismissal of the unjust enrichment claims that were fled alternatively? Sure. Because the unjust enrichment claims governed by Georgia law, under Georgia law, an unjust enrichment claim does not lie when there is an undisputed contract that governs the party's conduct. And that is the case here. The plaintiffs agree. We agree that there's a contract. It doesn't matter that that contract claim is More importantly, the benefit conferred, the alleged benefit conferred here, the payment of tuition, was paid, triggered by the contract itself. So the unjust enrichment claim couldn't, is deficient for that reason as well. So it can't be pled alternatively? Not when there's an undisputed contract that exists that governs the party's conduct. But there certainly is a disputed contract claim. I mean, the district court dismissed it. So it was done. The claim is disputed, but the existence of the contract is not disputed. Aren't the terms of the contract disputed? I don't believe so, Your Honor. There's an enrollment agreement that incorporates the policy handbook. There's no dispute about what the contract is. Okay. Your position is, I mean, I think where Judge Steele is going is that there are some jurisdictions that don't follow the Georgia substantive principle. That if a contract exists, you don't have an unjust enrichment claim, even if the breach of contract claim fails. But there are jurisdictions that go a different way and allow you not only to plead in the alternative, but try to recover in the alternative. Your position is in line with the district court that Georgia is different. That's correct, Your Honor. I have six seconds left. If there are any additional questions, I'd be happy to address them. Thank you. Thank you very much, Mr. Dickerson. My esteemed opposing counsel says, you know, there's been no breach of the contract. The contract isn't specifically breached here. There's no issue with the contract. And yet, if that's really the case, why can't you plead in the alternative unjust enrichment? We're saying that there is... Because there are some... I haven't done a deep dive into it, but there are some Georgia cases which say, I think district court cases which say, that if you have a contract and your breach of contract claim fails, you can't then pivot to an unjust enrichment claim. That's different than other jurisdictions which allow you to do exactly what you're suggesting. So, if Georgia law plays out that way, you may have a problem. That is... Those cases are based on a situation where the contract is applied. And there's a term that's either breached or not breached. Counsel just said, there is no breach of the contract here. There's no language that was breached. We, of course, are saying that the milestone table does show a potential breach, but otherwise it's not contractually documented in a written form. And so, when that's the case, the Georgia courts would allow unjust enrichment. There's not a contract on point, and so the unjust enrichment doctrine can't apply. Now, let me say this. The judge threw us out because we didn't meet particularity, both on breach of contract and on the Arizona fraud counts. You got to show who, what, when, where, why. But if there was fraud, and our client was because of the misleading promise that you could finish this program in 60 hours, a little over three years, then that means the contract is void. It's fraud. It's misrepresentation. Fraud in the inducement. And yet, then he still threw out unjust enrichment, even though he held us to this particularity standard for fraud under the Arizona statute. You can't have it both ways. Either you had to prove all the details, which we did under the Arizona statute. They say in the enrollment agreement, you can graduate in 60 hours. That's not true. So we did show the who, what, where, and why. It's right on paper, right in his enrollment document. But if you take the court's thinking, we didn't show it. We didn't show the who, what, where, and why. There was no proof. So we don't have fraud. But you can't also say that the unjust enrichment cannot apply. And so, I agree with Judge Steele's suggestion that perhaps the alternative, the liberal allowance for alternative pleading should be recognized here. If the court, like some members have suggested today, is having a hard time with breach of contract, absolute breach of contract, then we go to good faith and fair dealing. And I think if you look at the Arizona law on good faith and fair dealing, you certainly get to the point. You don't have to tether it to the contract. You have to look at what is expected. Look at the Rawlings case. What is expected from the All the folks like him expected was somebody to, in good faith, give them a program that they could advance through and get that doctorate. And that was not provided. Let me ask you a question, if I could, about the contract claim as opposed to the good faith and fair dealing claim. What language or portions of the documents that have been claimed, do you link the promise that GCU would provide support and feedback to its doctoral students? I mean, it is stated in the enrollment agreement and the incorporated documents that that will occur. If you look at the... It says specifically in there that it will provide support and feedback to the doctoral students. I don't have the verbatim in front of me. I don't want to misspeak. But if you look at the handbook, which of course is hundreds of pages long, there is a section on doctorate students and the doctorate program. And it is lengthy. And it goes through the back and forth that you will undertake with your panel and the members. And then, of course, you obviously have dissertation classes specifically mentioned. And I agree with Judge Jordan that that implies that you will have the back and forth that we all know is implied in a dissertation type environment. And so when you combine all that, I say, yes, it is in the contract. But most directly, the contract clearly says you can do this in 60 hours. And we've said you can't. And that's the breach. You can't do it in 60 hours. That's the breach. Now, we can't prove that, according to your honor, with their document. But we can prove that with the facts and the reality. And we will prove that. Now, secondly, good faith and fair dealing, to my way of suggesting, what did everyone bargain for in this undertaking? And even if it wasn't in the contract, when you're paying for dissertation courses year after year, you understand that you're to have a committee, you're to have a chair, you're to be able to have that back and forth with meaningful feedback. And I can tell you that does not happen at Grand Canyon University. We will prove that at the end of the day, at the appropriate stage of this case, which would be summary judgment to deal with these type of issues. Can I ask you a question about the enrollment agreement? I just, I don't know what this acronym stands for. What is CDS? Do you know? I guess I do not know, your honor. I apologize. Because in the enrollment agreements where it talks about doctoral graduation requirements, it talks about approval of a dissertation by the committee and the dean as demonstrated in a signed D-80 document. But that's for CDS, quote unquote. I have no idea what CDS means because I couldn't find that acronym anywhere before. Maybe I just missed it. I apologize, your honor. And I do recollect the portion you're talking about, but I don't, as I stand here, know what that means. You know, Mr. Dickerson? I know, your honor. Okay. Thank you so much. Thank you both very much.